**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**STARNASIA N. MCMILLAN,**

                **Plaintiff,**

        **v.**                                                        **No. 1:19-cv-620**

                                                                        **(TJM/CFH)**

**TOWN OF COLONIE and COLONIE**
**POLICE DEPARTMENT,**

                **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

        Before the Court is the Defendants' motion for summary judgment.  See dkt. # 28.

The parties have briefed the issues, and the Court has determined to decide the matter

without oral argument.

**I.      Background**

        This case arises from an incident that occurred on May 27, 2018, when officers from

Defendant Town of Colonie Police Department took Plaintiff Starnasia McMillan into custody

at St. Patrick's Cemetery in Watervliet, New York.  Plaintiff alleges that these officers

violated her constitutional rights by using excessive force.  She also contends that they

committed an assault and battery and negligence.  Plaintiff has not sued the individual

officers, but has instead raised claims against the Town of Colonie and the Colonie Police

Department.

The record developed in this matter indicates that on May 27, 2018 Plaintiff Starnasia McMillan was operating a white BMW four-door sedan on Route 2 in the Town of Colonie, New York, at around 8:45 p.m.  Defendants' Statement of Material Facts ("Defendants' Statement"), dkt. # 28-17, at ¶ 1.[1]  The vehicle had an inoperable headlight.  Id. at ¶ 2. Colonie Police Sgt. Thomas Breslin, who was in uniform and driving a marked vehicle, turned on his car's lights and initiated a traffic stop.  Id. at ¶ 2.  Plaintiff drove the BMW into St. Patrick's Cemetery and onto an access road within the cemetery.  Id. at ¶ 4.  Plaintiff's parents are buried there.  Id. at ¶ 5.

Plaintiff was not wanted for a crime, but Sgt. Breslin had spoken directly to a City of Troy police sergeant who informed him that Plaintiiff "'was a 941, that she needed to go to the hospital based on their incident' and that she met their criteria for a person who appeared to be a danger to herself."  Id. at ¶ 8.  Plaintiff "denies each of the assertions contained in paragraph 8 of" Defendants' statement "and respectfully submits that defendants' representations" in that paragraph are "inconsistent with Sgt. Breslin's testimony."  Plaintiff's Response to Defendants' Statement of Material Facts (Plaintiff's Response"), dkt. # 32, at ¶ 8.[2]

---

[1] Both parties submitted the statement of material facts with citations to the record required by Local Rules 7.1 and 56.1(a) and 56.1(b).  The Court will cite to the Defendants' statement for matters which are uncontested and note the nature of the disagreement when matters are in dispute.

[2] In support of this statement, Plaintiff points the court to pages 22-24 of Sgt. Breslin's deposition, which Defendants provided as an exhibit to their motion.  See Exh. J to Affidavit of Carolyn B. George, dkt. # 28-10.  Plaintiff has not pointed the Court to any specific evidence, nor has she explained why Sgt. Breslin's testimony is inconsistent with
(continued...)

Friends or family of Plaintiff had contacted the Troy, New York, police department to express concern over social media posts from the Plaintiff.  Defendants' Statement at ¶ 9. Plaintiff had made social media posts that mentioned going to see her parents.  Id. at ¶ 10. Friends contacted Plaintiff earlier in the day asking if she was okay.  Id. at ¶ 11.  Plaintiff had received counseling for mental health issues at Samaritan Hospital within the previous six months.  Id. at ¶ 12.

Sgt. Breslin and the three other police officers who responded to the scene had received training in dealing with emotionally disturbed persons.  Id. at ¶ 13.  They also had training in use of force.  Id.  The Town of Colonie has a written policies for dealing with emotionally disturbed persons and for the use of force.  Id. at ¶ 14.

Breslin approached the driver's side of the vehicle and asked Plaintiff for her driver's license.  Id. at ¶ 15.  Plaintiff did not have her driver's license but offered to provide the number for that license to Breslin.  Id. at ¶ 16.  Breslin asked Plaintiff to show him her keys to the vehicle.  Id. at ¶ 17.  She did so.  Id.  Plaintiff shut off the car when Breslin asked her to show him the keys.  Id. at ¶ 18.

Plaintiff did not get out of the car by herself.  Id. at ¶ 19.  Breslin testified that Plaintiff displayed "an elevated emotional state."  Id. at ¶ 20.  Plaintiff claims that Breslin approached her car and accused her of stealing the vehicle.  Plaintiff's Response at ¶ 20. Defendants claim that Breslin "told Plaintiff words to the effect that 'some people, you know, they'll steal cars.'" Defendants' Statement at ¶ 21.  Plaintiff claims that Breslin "accused

---

[2](...continued)
Defendants' claim.  Plaintiff's response technically complies with Rule 56.1(b), but it does not aid the Court in determining this issue.

plaintiff of starting her car with a screwdriver." Plaintiff's Response at ¶ 21.

Patrolman Philip Gerwitz arrived while Sgt. Breslin stood outside Plaintiff's car speaking to her. Defendants' Statement at ¶ 22. Patrolman Aaron Hanley also arrived in response to a call for an emotionally distressed person at St. Patrick's Cemetery. Id. at ¶ 23. Hanley arrived after Breslin and Gerwitz. Id. at ¶ 24. Defendants claim that "Plaintiff was yelling and screaming inside her vehicle." Id. at ¶ 25. Plaintiff points out that the statement does not "provide a time reference" for when such conduct occurred. Plaintiff's Response at ¶ 25.

Breslin reached into the car to grab Plaintiff's keys. Defendants' Statement at ¶ 26. When he did so, the keys broke in his hand. Id. Breslin and Plaintiff both had part of an ignition key. Id. Breslin claims he attempted to take the keys to prevent Plaintiff from fleeing the scene. Id. at ¶ 27. Without citing to any evidence of record, Plaintiff disputes this claim. Plaintiff's Response at ¶ 26. Id. Breslin then reached into the vehicle and unlocked the door. Defendants' Statement at ¶ 28. Defendants assert that Breslin and Gerwitz then "removed" Plaintiff from the car and "placed her on the grass." Id. at ¶ 29. They handcuffed her. Id. Plaintiff disputes that the officers "placed" her on the grass. Plaintiff's Response at ¶ 29. An unidentified party returned the car keys to Plaintiff's family. Id. at ¶ 30.

Friends and family members of the Plaintiff came to the scene. Id. at ¶ 31. Defendants claim that family members told Breslin and Gerwitz that Plaintiff had made social media posts "to the effect that she wanted to kill or harm herself." Id. at ¶ 32. Plaintiff contends that Defendants' "representations . . . are inconsistent with Sgt. Breslin's testimony" and the testimony of her relatives who came to the scene. Plaintiff's Response

4

at ¶ 32.  She agrees, however, that her family members had "[come] to the cemetery because she had been showing signs of [being] depressed and/or upset."  Defendants' Statement at ¶ 33.  Breslin prepared a use-of-force report for the incident.  Id. at ¶ 34. Officer Gerwitz wrote out an emotionally disturbed person report.  Id.

A Town of Colonie EMS ambulance took Plaintiff to Samaritan Hospital.  Id. at ¶ 35. Defendants assert that Officer Hanley rode with Plaintiff to the hospital.  Id. at ¶ 36.  Plaintiff claims that records indicate that both Hanley and Gerwitz accompanied her.  Plaintiff's Response at ¶ 36.  Defendants contend that Hanley explained to Plaintiff the reason for her detention during the ambulance trip.  Defendants' Statement at ¶ 37.  Plaintiff denies that this conversation occurred.  Plaintiff's Response at ¶ 37.   Defendants claim that Hanley turned Plaintiff over to staff at Samaratin's Mental Health Unit.  Defendants' Statement at ¶ 38.  Plaintiff repeats her claim that Officer Gerwitz was also involved.  Plaintiff's Response at ¶ 38.

Plaintiff asserts additional facts in opposition to Defendants' Motion.  See Plaintiff's Response at ¶¶ 39-58.  She relates that at around 8:30 p.m. on May 27, 2018, she was sitting in her car at St. Patrick's Cemetery.  Id. at ¶ 39.  After a conversation with a relative, Plaintiff left the cemetery.  Id. at ¶ 40.  Plaintiff returned to the cemetery about ten minutes later.  Id. at ¶ 41.  "Upon" this return, Plaintiff claims, "a marked Colonie Police vehicle activated its lights."  Id. at ¶ 42.  Defendants deny this statement "to the extent that Sgt. Breslin was not asked at what point he activated his lights on" the police car.  Defendants' Response to Plaintiff's Statement of Additional Facts ("Defendants' Response"), dkt. # 35, at ¶ 42.

Plaintiff returned to "almost the same spot" in the cemetery where "she was . . . when

she left . . . approximately ten (10) minutes" earlier.  Plaintiff's Response at ¶ 43.  She

turned her vehicle off.  Id.  A uniformed Colonie Police Officer approached the vehicle and

began asking her questions.  Id. at ¶ 44.  Plaintiff did not have her driver's license with her,

but offered her New York license number.  Id. at ¶ 45.  Plaintiff claims that Breslin accused

her of using a screwdriver to start her car.  Id. at ¶ 46.  Pointing to Breslin's testimony,

Defendants dispute this claim.  Defendants' Response at ¶ 46.  Breslin asked to see

Plaintiff's car keys.  Plaintiff's Response at ¶ 47.  Plaintiff held up her keys, and Breslin

reached through the window in an attempt to seize them.  Id. at ¶ 48.  The parties dispute

who caused the key to break during this attempt.  Id. at ¶ 49; Defendants' Response at ¶

49.

Plaintiff claims that Sgt. Breslin and "another officer" then "attempted to forcibly

remove her from the vehicle.  Plaintiff's Response at ¶ 50.  Defendants deny that the force

the officers used was excessive or unjustified by the circumstances.  Defendants' Response

at ¶ 50.  They dispute whether Plaintiff had her seatbelt on when the officers attempted to

remove her from the car.  Plaintiff's Response at ¶ 51; Defendants' Response at ¶ 51.  They

also dispute the degree of force officers used to remove Plaintiff from the car and whether

they "slammed" her to the ground after they got her out of the vehicle.  Plaintiff's Response

at ¶ 52; Defendants' Response at ¶ 52.  Plaintiff denies that any officer ever asked her to

turn off her car.  Plaintiff's Response at ¶ 53.  The Defendants dispute this claim.

Defendants' Response at ¶ 53.  Defendants dispute Plaintiffs' claim that officers caused

bruising to her left arm and wrist and a cut to her thigh when they removed her from the car.

Plaintiffs' Response at ¶¶ 54-55; Defendants' Response at ¶ 54-55.

Plaintiff describes her transport to Samaritan Hospital as "forcible."  Plaintiff's

Response at ¶ 56. She remained there for "a few hours" and was then discharged. Id. at ¶ 57. She claims that the arrest caused her to be "traumatized to go back to St. Patrick's cemetery to visit her parents' graves." Id. at ¶ 58.

Plaintiff filed a Complaint in this action on May 24, 2019. See dkt. # 1. The Complaint does not name any of the officers involved in her detention, but instead raises claims against the Town of Colonie and the Town of Colonie Police Department. The Complaint raises four claims. Court One, raised against both Defendants, alleges that the officers used excessive force in detaining Plaintiff in violation of her constitutional rights and 42 U.S.C. § 1983. Count Two alleges that Plaintiff's injuries were caused by a municipal policy or custom and seeks damages against the Town of Colonie and the Colonie Police Department. Count Three is a state-law claim for negligence against "all defendants." Count Four, again raised against "all defendants," alleges assault and battery. Plaintiff also seeks punitive damages.

After service of the Complaint and an answer, the parties engaged in discovery. At the close of discovery, Defendants filed the instant motion. The parties then briefed the issues, bringing the case to its present posture.

## II.    Legal Standard

The parties seek summary judgment. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict

for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

## III.    Analysis

Defendants seek summary judgment on several bases, which the Court will address in turn.

### A.    Colonie Police Department

Defendants argue that the Court should grant summary judgment to the Colonie Police Department.  Since the Colonie Police Department is a political subdivision of Defendant Town of Colonie, Defendants assert that any claims against the Police Department are duplicative of those against the Town.  Plaintiff does not oppose the motion on this basis.  The Court will therefore grant the motion on the basis stated by the

8

Defendants and dismiss Defendant Colonie Police Department from the action with prejudice.

### B.    Excessive Force Claim

Defendants also claim that no evidence supports Plaintiff's claim that Defendants violated her Fourth and Fourteenth Amendment rights by using excessive force to arrest her.  They further contend that, even if the evidence supported an excessive force claim, Defendants would be entitled to qualified immunity.  Plaintiff responds that the evidence creates a question of fact about whether the force the Police Officers used was reasonable under the circumstances.

Excessive force claims brought pursuant to the Fourth Amendment "'are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard.'" Shamir v. City of New York, 804 F.3d 553, 556 (2d Cir. 2015) (quoting Graham v. Connor, 490 U.S. 386, 388 (1989)).  Using "excessive force renders a seizure of the person unreasonable and for that reason violates the Fourth Amendment." Id.  To decide whether the force was reasonable, a court should pay "'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Soares v. Connecticut, 8 F.3d 917, 921 (2d Cir. 1993) (quoting Graham, 490 U.S. at 396).  This standard focuses on "'a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Brown v. City of New York, 798 F.3d 94, 100 (2d Cir. 2015) (quoting Graham, 490 U.S. at 397).  "A court's role in considering excessive force claims is to determine whether a jury, instructed as to the relevant factors, could reasonably find that the force used was excessive." Id. at 103.

9

The Court will grant the motion as to this claim, but for a reason different than that argued by the Defendants.  The only defendants in this matter are the Town of Colonie and the Colonie Police Department.  Neither of the officers who arrested the Plaintiff and allegedly used excessive force are defendants in this case.   The Defendants here cannot be liable simply because the Town of Colonie Police Officers violated her constitutional rights, since federal law "expressly prohibits *respondeat superior* liability for muncipalities," and "a plaintiff must demonstrate that 'through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.'" Agosto v. N.Y. City Dep't of Educ., 982 F.3d 86, 97-98 (2d Cir. 2020) (quoting Bd. of Cty. Commr's of Bryan Cty., Okla. v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original)).  Since Plaintiff raises this type of claim in Count Two and does not address any official policy or custom in this count, she cannot prevail here.  The Court will grant the motion in this respect as well.[3]

On the other hand, qualified immunity is not a defense available to a municipality. "Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Stephenson v. Doe, 332 F.3d 68, 76 (2d Cir. 2003) (quoting McCardle v. Haddad, 131 F.3d 43, 50 (2d Cir. 1997)).  Plaintiff did not sue an individual official.  Courts are clear that "a municipality may not assert qualified immunity based on its good faith belief that its actions or policies are constitutional[.]" Vives v. City of New York, 524 F.3d 346, 350 (2d Cir. 2008).  "[A] municipality is liable for even its good faith constitutional violations presuming that the

---

[3]The Court is perplexed as to why Defendants have not addressed this issue during the course of the litigation.

municipality has a policy that causes those violations." Id. (citing Owen v. City of Independence, 445 U.S. 650, 657 (1980)).  Defendants here cannot take advantage of qualified immunity.

### C.      Municipal Liability

Plaintiff does raise a claim on which the remaining Defendant could be liable under 42 U.S.C. § 1983.  As a general matter, "[g]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.'" Agosto, 982 F.3d at 98 (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 122 (1988)).  Municipal liability is limited by Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  In that case, the Supreme Court found that municipal liability existed "where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).  To prevail, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Commr's v. Brown, 520 U.S. 397, 403 (1997). "A government's official policy may be 'made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 142 (2d Cir. 1999) (quoting Monell, 436 U.S. at 694).

Defendants claim that the Town had a formal written use-of-force policy and formal written mental health crises/emotionally disturbed persons policy at the time in question. Moreover, the Town provided training in these policies to the officers who responded to the scene.  As such, Defendants argue, Plaintiff has no evidence that she suffered any injuries because of the Town's policies or practices, nor can she show she suffered from Defendants' alleged failure to train their officers.

11

Defendants' moving papers include a copy of The Town of Colonie Police

Department's Use of Force Policy, which the parties appear to agree was in place on the

date of the incident in question.  See dkt. # 28-2.  As a general matter, the policy provides

that:

> Police Officers may use only the level of physical fore necessary in the performance
> of their duties in accordance with Article 35 of the New York State Penal law.  It is the
> responsibility of each officer to be aware of Article 35 and to guide his/her actions
> based upon that law, department policy and training.  It is the policy of the Police
> Department that officers will use no more force than reasonably called for, given the
> facts and circumstances perceived by the officer at the time of the event, to
> effectively bring an incident or person under control.  The totality of the
> circumstances perceived by an officer at the time force was used may include, but
> shall not be limited to such factors as: resistance ot the officer, potential danger to
> persons, the need to act in a timely manner, or what and how much force was used.

Id.  The policy provides definitions of "reasonable cause to believe," and "reasonably

necessary," among other terms.  Id.  The policy also defines circumstances when officers

may use different types of force, including "less-lethal or non-deadly force."  Id.  In relevant

part, the policy provides that "[o]fficers may use physical force when reasonable and

necessary to take into custody any person who appears mentally ill and is conducting

himself in a manner that is likely to result in serious harm to themselves or others."  Id.  The

policy also requires that officers document each use of force, and that a supervisor review

such reports.  Id.  Officers must also document any injuries that occur from such use of

force.  Id.  The policy also permits a supervisor to order an officer to accompany a person

injured during an encounter to the hospital in an ambulance.  Id.

The policy also requires that officers undergo use of force training each year.  Id.

Officers must demonstrate proficiency with firearms twice a year.  Id.  They receive taser

training once a year.  Id.  The policy also provides that "Supervisory Officers shall attempt to

12

respond to all incidents where force is used and shall review all such incidents and the associated documentation." Id.  Supervisors must investigate any complaints of excessive force that come to their attention, and must report their findings to the Chief's Office. Id.

Defendants also provide a copy of the Town of Colonie Police Department's general order on Mental Health Crises/Emotionally disturbed persons.  See dkt. # 28-16.  The policy establishes procedures for the Department to follow "[u]pon notification of a potential Mental Health problem."  Id.  The policy directs the officer who arrive to "assess the situation" and determine whether to call in the Mobile Crisis Team ("MCT").  Id.  If that Team arrives, officers are to assist the MCT, transfer responsibility to the Team if appropriate, and authorize ambulance transport pursuant to New York Mental Hygiene Law Section 9.41.  Id. The order quotes the Mental Hygiene law to describe the circumstances under which officers may act because they have encountered a person "conducting himself in a manner which is likely to result in serious harm to himself or others."  Id.  An officer must ride with the ambulance under those circumstances and "advise" doctors "of the circumstances and that the patient is first being transported to an Emergency facility."  Id.  Officers are also required to document the incident "on the appropriate report."  Id.

Plaintiff argues that "by their own admission, neither Sgt. Breslin nor Officer Gerwitz exercise their independent judgment on the scene–in violation of their policies."  The officers admit, Plaintiff claims, that they "failed to follow their own training which at this stage should be sufficient to defeat defendants' application."  Moreover, "Plaintiff has not been provided with disciplinary records for any of the officers in this matter and without those records, it is respectfully submitted plaintiff cannot speak to a 'pattern' etc."

Plaintiff does not explain how the policies recited above are inadequate or how they

caused any injuries that Plaintiff suffered.  Indeed, her argument suggests that her injuries were a result of the officers failing to follow the Police Department's policies.  In that sense, then, Plaintiff has failed to "identify a municipal 'policy' or 'custom' that caused [her] injury." Brown, 520 U.S. at 403.  She cannot make out a municipal liability claim under those circumstances.

Plaintiff could, of course, identify a municipal "custom," rather than a policy, that caused her injuries.  "Under *Monell*, '[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and wdespread as to practically have the force of law.'" Lucente v. Cty. of Suffolk, 980 F.3d 284, 297 (2d Cir. 2020) (quoting Connick v. Thompson, 563 U.S. 51, 61 (2011)).  "A Section 1983 action may be maintained based on a practice that was so persistent or widespread as to constitute a custom or usage with the force of law.'" Green v. City of New York, 465 F.3d 65, 80 (2d Cir. 2006) (quoting Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004) (internal quotations omitted)).  "The alleged custom or practice need not be embodied in a rule or regulation," but "the alleged practice 'must be so manifest as to imply the constructive acquiescence of senior policy-making officials.'" Id. (quoting Sorlucco v. N.Y. City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992)).

Plaintiff has admitted that she has no evidence of any sort of custom or practice involving excessive force or mistreatment of emotionally disturbed persons to constitute a custom or practice that would qualify for Section 1983 liability.  Summary judgment is therefore appropriate on this theory of *Monell* liability as well.

"Where a city's official policy is constitutional, but the city causes its employees to apply it unconstitutionally, such that the unconstitutional application might itself be

14

considered municipal policy, the city may be held liable for its employees' unconstitutional acts." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125 (2d Cir. 2004). Failures in training can cause such liability. Id. "Municipal liability may . . . be premised on a failure to train employees when inadequate training 'reflects deliberate indifference to . . . constitutional rights.'" Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 440 (2d Cir. 2009) (quoting City of Canton v. Harris, 489 U.S. 378, 392 (1989)). To demonstrate such deliberate indifference, the plaintiff must demonstrate "(1) 'that a policymaker knows to a moral certainty that her employees will confront a given situation'; (2) 'that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation'; (3) 'that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights.'" Id. (quoting Walking v. City of New York, 974 F.2d 298, 297-98 (2d Cir. 1992)). "'[D]eliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents.'" Id. (quoting Vann v. City of New York, 72 F.3d 1040,1049 (2d Cir. 1995)). A plaintiff must show not only deliberate indifference, "but also . . . identify a specific deficiency in the city's training program and establish that the deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Amnesty Am., 361 F.3d at 129 (quoting City of Canton v. Harris, 489 U.S. 378, 390-91 (1989)).

In this respect, Plaintiff argues that Defendants know to a moral certainty that they will encounter persons with mental health conditions and that training is necessary to address such situations properly and in a way that avoids the use of excessive force. She claims that "a deficiency in the defendants' training program" permits police to lie to persons

suspected of having mental health issues and "then allows the police to seize an individual without making an independent evaluation as required by" Town "policy and the M[ental] H[ealth] L[aw]. It also then creates a situation–as it did here–that the officers' actions are then directly related to excessive force."

The Court will grant the motion in this respect as well. As explained above, Defendants have provided the Court with information that officers receive training on use of force and dealing with emotionally disturbed persons. Defendants have also provided evidence that the officers involved in the incident here received that training. See Exh. D to Affidavit of Carolyn B. George, dk. # 28-4. Plaintiff has not attempted to address the training that the officers received in any substantial or specific way, and has produced no evidence to establish that such training was inadequate in a constitutional sense. She has not produced evidence that any injuries she suffered resulted from specific inadequacies she has identified in the Defendants' training programs. Instead, she offers only a vague suggestion that some vague deficiency in training about using force with disturbed people will inevitably lead to excessive force. Such vague and conclusory arguments do not point to any evidence that could support Plaintiff's claim.

The Court will therefore grant the motion with respect to Plaintiff's Monell claims as well.

### D.    State Law Claims

The Court has dismissed all the federal claims in this case. The Court therefore has discretion to dismiss the supplemental state-law claims pled in the Complaint. Federman v. Empire Fire & Marine Ins. Co., 597 F.2d 798, 809 (2d Cir. 1979). In many cases, "'if [all] federal claims are dismissed *before trial* . . . , the state claims should be dismissed as well.'"

Motorola Credit Corp. v. Uzan, 388 F.3d 39, 56 (2d Cir. 2004) (quoting Castellano v. Bd. of

Trustees, 937 F.2d 752, 758 (2d Cir. 1991)).  If, however, "'the dismissal of the federal claim

occurs late in the action, after there has been substantial expenditure in time, effort, and

money in preparing the dependent claims, knocking them down with a belated rejection of

supplemental jurisdiction may not be fair.  Nor is it by any means necessary.'" Id. (quoting

Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994) (internal citation omitted)).

While the Court recognizes that extensive discovery and motion practice has

occurred in this matter, the Court concludes that the best use of judicial resources would be

to dismiss the State claims without prejudice.  The Court notes that the remaining state-law

claims rely on *respondeat superior* liability due to Plaintiff's failure to name any of the

individual officers involved in the alleged use of excessive force.  As explained, that type of

liability is not available under federal law,[4] and the Court finds that a state court would be

better equipped to address such questions.  The Court will therefore dismiss the state-law

claims without prejudice to repleading in an appropriate forum.

## IV.    CONCLUSION

For the reasons stated above, the Defendants' motion for summary judgment, dkt. #

28, is hereby GRANTED.  Plaintiff's federal claims are dismissed WITH PREJUDICE.

Plaintiff's state-law claims are dismissed WITHOUT PREJUDICE.  The Clerk of Court if

directed to CLOSE the case.

---

[4]The Court has no insight into Plaintiff's pleading choices.  Still, Plaintiff chose not to name any of the officers involved in her Complaint, and one consequence of that choice is that no federal claims remain.  The Court exercises its discretion in part because the Court declines to hear state claims very similar to federal claims that Plaintiff chose not to plead in a way that would make anyone liable.

Thomas J. McAvoy
Senior, U.S. District Judge

**IT IS SO ORDERED.**

Dated: September 13, 2021